UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:10CR 52 SNLJ (LMB) |
| ) | |
| CARMELO DEL REAL, ) | |
| a/k/a, Ruben Martinez, ) | |
| a/k/a, Ruben Richardson, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The defendant, Carmelo Del Real, is charged by Indictment with Possession With Intent to Distribute 50 Grams or More of Methamphetamine. He filed Defendant's Motion to Suppress Evidence and Memorandum in Support (Document #23). The government filed its Response (Document #24). A hearing was held on May 14, 2010. It is the defendant's claim that "any physical evidence seized from the person or possession of defendant, or otherwise seized, was seized as a result of searches and other illegal intrusions into defendant's person and property without a valid search warrant issued upon probable cause and not pursuant to a lawful order or any other legal justification..." and as a result should be suppressed.

**Factual Background**

On January 19, 2010, DEA Special Agent Bernie Gard received a request from the Little Rock DEA office for assistance in contacting a white 1995 Nissan Maxima with Missouri

registration UE5-N8G which other Agents had under surveillance. Gard contacted Missouri State Highway Patrol Trooper Chris Hamlett and requested that he stop the vehicle if an occasion presented itself. At approximately 3:00 a.m. Trooper Hamlett located the Nissan traveling east bound on Highway 60, approaching the Interstate. Once on the Interstate, Hamlett observed the vehicle cross the fog line and then weave to the centerline of the roadway, and effected a traffic stop. Hamlett spoke with the driver, who indicated that he had left his identification at home.

Hamlett then approached the female passenger who indicated that the driver's name was Ruben Martinez, that they had been dating for a couple of weeks and that they were going to visit with the driver's family. The passenger did not know where the driver's family lived, but indicated that they were going to stay with the family for a couple of days.

The driver told Trooper Hamlett that his name was Carmelo Del Real and that he and his passenger were traveling to Lexington, Kentucky. The Trooper noted that the driver was extremely nervous and would not make eye contact with him. Hamlett also observed that there was a single key in the ignition of the vehicle and food wrappers strewn about in the rear seat area of the vehicle. The passenger continued to indicate that the driver's name was Ruben Martinez, but became nervous as the officer attempted to learn the identity of the driver.

Hamlett requested consent from the driver to search the driver's vehicle via a computer in the officer's vehicle with a Spanish language function. The driver gave consent to search the vehicle. A preliminary search disclosed nothing of immediate evidentiary interest. A drug detecting canine was requested, and when it arrived, was utilized to sniff the vehicle. The dog alerted to the presence of the odor of narcotics at the front of the vehicle. The officers examined that area of the vehicle and observed indications that the front end had recently been removed.

The vehicle was taken to the Troop Satellite Office where three bundles of what later tested positive for methamphetamine were discovered concealed in natural voids in the vehicle frame. Officers also located a road map and other documents in the vehicle which were seized as evidence.

The Defendant was interviewed by Agents of the DEA, and after being advised of his rights indicated that he understood those rights and would speak with the Agents. Del Real indicated that he was born in Chihuahua, Mexico and had resided in the Kansas City area for the past six years. Del Real admitted to owning the vehicle where the drugs were located and claimed that he had not been in possession of the car for the past couple of days, as it was being repaired by a man he only knew as "Foco." Del Real denied any knowledge of the drugs concealed in his vehicle.

## Discussion

The defendant, by his Motion to Suppress Evidence, seeks the suppression of items of physical evidence obtained from the stop of his vehicle.

## Probable Cause for Traffic Stop

Any traffic violation, however minor, provides probable cause for a traffic stop. United States v. Cummins, 920 F.2d 498, 500 (8th Cir. 1990), cert. denied, Cummins v. United States, 502 U.S. 962 (1991). Trooper Hamlett first observed the defendant's vehicle traveling over the fog line onto the shoulder. (Tr. 6). Then the defendant's vehicle weaved onto the center line from the right lane. (Id.).

Section 304.015 of the Revised Statutes of Missouri requires that a vehicle be driven upon the right half of the road with certain exceptions, none of which are applicable in this instance.

The defendant's vehicle was on the center line and did not remain in the right lane. (Tr. 6). Under § 304.010, RSMo., a driver is required to exercise the highest degree of care in operating a vehicle while traveling on a road open for public travel. McTeer v. Clarkson Const. Co., Inc., 807 S.W.2d 174, 180 (Mo. Ct. App. 1991) Failure to keep a vehicle under control is evidence of negligence. Fields v. Berry, 549 S.W.2d 122, 125 (Mo. Ct. App. 1977) (citing Myers v. Buchanan, 333 S.W.2d 18, 21 (Mo. banc 1960)). Trooper Hamlett had probable cause to believe the defendant was committing traffic violations and, consequently, had probable cause to stop the vehicle.

The court finds that the stop of the defendant's vehicle was a valid, lawful traffic stop.

## Consent to Vehicle Search

The court finds the defendant gave consent to the search of the vehicle he was driving. When asked via a computer with a Spanish language function in Trooper Hamlett's vehicle whether the officer had permission to search the defendant's vehicle, the defendant responded, "Si," nodded, and motioned toward the vehicle.

A search based on consent may be made by law enforcement officers without a warrant or probable cause, and any evidence discovered during the scope of the search may be seized and admitted at trial. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). To determine whether consent was given voluntarily, courts examine the totality of the circumstances surrounding the consent. Id., 412 U.S. at 227. Even persons who have been arrested or who have been arrested *de facto* (detained) can voluntarily consent to a search. United States v. Jimenez, 478 F.3d 929, 932 (8th Cir 2007) (citing United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990)).

There are several factors that weigh on the court's determination of voluntariness. The

first is knowledge of the constitutional right to refuse consent. Schneckloth, 412 U.S. at 227. In this case, the defendant was aware of his right to refuse consent because Trooper Hamlett's computer stated to the defendant in Spanish that he had the right to deny the officer's request to search the vehicle. (Tr. 17).

The second factor involves the age, intelligence, education, and language ability of the defendant. Schneckloth, 412 U.S. at 226; Jimenez, 478 F.3d at 932 (consent voluntary because "[t]here was no indication that [defendant] did not understand the officer's questions"); United States v. Cedano-Medina, 366 F.3d 682, 686 (8th Cir. 2004) (Spanish-speaking defendant's consent deemed voluntary because defendant's non-verbal signals indicated consent; use of a Spanish consent form is not required).

Here, the defendant is an adult and showed no lack of understanding of the request to search his vehicle. (Tr. 17). While the defendant may have had trouble communicating with Trooper Hamlett before the computer with the Spanish language function was used, the defendant indicated that he understood the request to search his vehicle made via the computer by responding, "Si," nodding his head, and motioning to the vehicle. (Id.).

The third factor is the degree to which the individual cooperates with the police. United States v. Saenz, 474 F.3d 1132, 1137 (8th Cir. 2007) (consent voluntary because defendant gave consent to search truck to two officers and did not complain or question officers during the search). In this case, the defendant gave consent understanding that he could refuse to give it, and he did not ask or tell officers to stop during the search or restrict the search in any way. (Tr. 24).

The fourth factor is the individual's attitude about the likelihood of the discovery of contraband. United States v. Hathcock, 103 F.3d 715, 720 (8th Cir. 1997) (consent to search

duffle bag voluntary because suspect believed officers would inevitably detect illegal substances inside). There is no indication in this case that the defendant believed the search of his vehicle would inevitably lead to the discovery of contraband.

The final factor is the length of detention and the nature of questioning including the use of physical punishment or other coercive police behavior. Schneckloth, 412 U.S. at 226. In this case, there was no evidence of any type of coercive police behavior. The officer did not promise the defendant anything in return for consent, threaten the defendant, pull a gun on the defendant, or show the defendant a gun. (Tr. 24). A mere thirty minutes passed from the time the defendant was pulled over to the time the officer called the canine unit. (Tr. 31). The defendant gave his consent to search the vehicle shortly before the canine unit was called. (Tr. 19).

In light of the totality of the circumstances surrounding the consent, the court finds the defendant's consent to the search of the vehicle he was driving was voluntary and made with understanding.

**Probable Cause for Vehicle Searches**

Even if the search of the defendant's vehicle had not been consensual, probable cause existed for Trooper Hamlett to search the defendant's vehicle. If probable cause develops to believe that a vehicle contains items subject to seizure, officers may search the vehicle without consent and without the necessity of stopping to obtain a search warrant, and the evidence may be admitted at trial. Carroll v. United States, 267 U.S. 132, 149 (1925); Pennsylvania v. Labron, 518 U.S. 938, 940 (1996).

"Articulating precisely what ... 'probable cause' mean[s] is not possible." Ornelas v. United States, 517 U.S. 690, 695 (1996). Probable cause is determined by looking at the totality

of the relevant circumstances and applying a "common sense approach." United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005). "Ultimately, probable cause exists ... when a reasonably prudent person would look at the facts and circumstances and believe 'that contraband or evidence of a crime will be found' if a vehicle were to be searched. U.S. v. Valle Cruz, 452 F.3d 698, 703 (8th Cir. 2006) (citing Ornelas, 517 U.S. at 696).

### Initial Search

"[A]pparently false statements and inconsistent stories," when combined with other factors in the totality of the circumstances, give officers probable cause to search a vehicle. Valle Cruz, 452 F.3d at 703 (citing United States v. Ameling, 328 F.3d 443, 449 (8th Cir. 2003)). In Valle Cruz, inconsistent statements of a vehicle driver and her boyfriend regarding their recent trip to New York contributed to a finding of probable cause to search the vehicle. Id. In Ameling, the defendants, after being pulled over, lied and gave inconsistent accounts of what they had been doing in town. 328 F.3d at 448. One defendant said they had come to shop, while the other stated they were there for a medical appointment. Id. One said they were in a hurry to pick up a child, while the other made no mention of a child. Id. They also gave inconsistent accounts of recently bought items. Id. at 448-49. The inconsistencies, in combination with the facts justifying the initial stop, constituted probable cause. Id. at 449.

In this case, the passenger and the defendant indicated different names when Trooper Hamlett asked for the name of the defendant. (Tr. 10-12). The passenger indicated that the defendant's name was Ruben Martinez. (Tr. 10). The defendant indicated that his name was Carmelo Del Real. (Tr. 11). The passenger, when confronted with the inconsistency, acted as though she had no idea that the defendant's name was Carmelo Del Real. (Tr. 12). The

-7-

defendant, when confronted with the inconsistency, would only say that his name was Carmelo Del Real. (Tr. 12).

Furthermore, the defendant's suspicious acts, viewed in light of Trooper Hamlett's experience and specialized training, also contribute to a finding of probable cause. What lay persons might consider innocent conduct may be viewed in a more significant, inculpatory light by a trained officer, and may amount to probable cause. United States v. Knox, 888 F.2d 585, 586-87 (8th Cir. 1989). In Knox, the Eighth Circuit held that conduct observed by a trained officer (people entering and exiting a duplex, the defendant's retrieval of an item from her vehicle for each person, and apparent transactions while the defendant sat in the vehicle) amounted to probable cause. Id. at 587. Probable cause existed because the conduct was consistent with the existence of drug trafficking to the trained narcotics officer, although it was possibly innocent to the casual observer. Id.

Trooper Hamlett was an officer trained in narcotics interdiction. (Tr. 5). He spent six months in training at the Missouri State Highway Patrol Law Enforcement Academy in Jefferson city. (Tr. 4). He also experienced a period of supervised training on the road with a field training officer. (Id.). Trooper Hamlett was trained to look for indicators of possible criminal activity during his interdiction courses and during his field training. (Tr. 5). Hamlett testified that he had made hundreds of traffic stops in his time as a police officer. (Tr. 8).

In this case, the defendant exhibited numerous behaviors consistent with the existence of drug trafficking to Trooper Hamlett. The defendant was nervous, shifted in his seat, and fidgeted with a Gatorade bottle ("Well, speaking with him, he continually moved in his seat and he was holding a bottle of Gatorade and was playing with the bottle of Gatorade. And he took several

really long drinks of it. And he, you know, wouldn't really look at me."). (Tr. 8-9). Hamlett testified that the nervous behaviors exhibited by the defendant seemed to be more than "normal" nervousness, in his experience. (Tr. 29). In addition, the defendant and his passenger would not make eye contact with Trooper Hamlett. (Tr. 9). When Trooper Hamlett asked the defendant's passenger whether there was any marijuana in the car, she looked at him and said, "No." (Tr. 18). She responded the same way when she was asked if there was cocaine in the car. (Id.). However, when Trooper Hamlett asked the passenger whether there was any meth in the vehicle, she looked at the floorboard and the responded, "No." (Id.). Hamlett testified that this was significant, according to his training, because lack of eye contact likely indicates that a person is guilty of more than just a traffic violation and is being deceptive. (Tr. 9, 18). The passenger also claimed not to know the couple's destination, but merely stated that the couple was visiting the defendant's family. (Tr. 10). Hamlett testified that he thought this was unusual, as most passengers know their destinations. (Id.).

Trooper Hamlett testified that the reason he asked for the defendant's consent to search the vehicle was because he felt suspicious of their trip in light of his training. (Tr. 15). His suspicion was heightened because he observed a card with a religious image on it and fast food wrappers strewn about the vehicle. (Tr. 15). Hamlett stated that he was trained to look for religious images because they were used to "throw officers off" and make the officers believe that vehicle occupants were "religious people." (Tr. 39-40). The officer also stated that he was trained that fast food wrappers strewn about a vehicle might indicate drug trafficking because drug trafficking vehicles do not stop. (Tr. 40). Hamlett stated that the occupants of drug trafficking vehicles do not want to leave the vehicles unattended, so the occupants eat inside the car while driving. (Id.). In

-9-

addition, Hamlett observed that there was no luggage in the car, which he believed to be inconsistent with the passenger's story about a trip to see the defendant's family for a few days. (Tr. 16). Furthermore, the defendant was unable to produce identification. (Id.).

This court finds that under these circumstances, the initial search of the defendant's vehicle, even without his consent, would have been valid. The clearly inconsistent statements made by the defendant and his passenger regarding the defendant's name, combined with the defendant's suspicious acts, in light of Trooper Hamlett's experience, provided sufficient probable cause to search the defendant's vehicle.

## **Second Search**

The court finds that Trooper Hamlett had probable cause to conduct the second, more in-depth search of the defendant's vehicle which led to the discovery of the bundles of methamphetamine.

An officer may detain a vehicle until a canine unit arrives upon a reasonable, articulable suspicion that "criminal activity is afoot." United States v. Blaylock, 421 F.3d 758, 769 (8th Cir. 2005) (citing United States v. Fuse, 391 F.3d 924, 927 (8th Cir. 2004)). In Blaylock, a vehicle was detained because a passenger in the vehicle exhibited suspicious actions, including nervous squirming, twitching, and shaking; the driver gave vague reasons for the trip; and the vehicle was a rental car on a known drug corridor. Id. In this case, the officer had a reasonable, articulable suspicion that criminal activity was afoot, as the defendant and passenger did not agree on the defendant's name, the defendant had no identification, both the defendant and passenger appeared nervous and would not make eye contact with the officer, the defendant could not sit still in his seat, the passenger did not know the couple's destination, and there was no luggage visible in the

-10-

vehicle. (Tr. 8-10,16).

There was no unreasonable delay between the initial time of the traffic stop and the time the canine unit arrived on the scene. In United States v. Bloomfield, the Eighth Circuit held that a one hour period between the time the defendant was pulled over and the time he was arrested was not an unreasonable period to wait for a drug dog when the officer acted diligently to minimize the detention period. 40 F.3d 910, 917 (8th Cir. 1994). In this case, it took only 10-15 minutes for the canine unit to arrive after the officer called. (Tr. 19). The total time period from when the defendant was pulled over to when the drug dog arrived was roughly 45 minutes. (Tr. 31). Although the officer waited about 30 minutes before calling the canine unit, the court finds that 45 minutes was not an unreasonable period to wait for the canine unit, as the 30-minute period before the call was made was spent questioning the defendant and passenger pursuant to the traffic stop. See United States v. Sanchez, 417 F.3d 971, 975 (8th Cir. 2005) (a forty-five minute detention was reasonable where the majority of the time was spent completing the traffic stop and a drug dog was used to dispel the suspicion of drug trafficking).

When a canine alerts to a vehicle, an officer has probable cause to search that vehicle. Blaylock, 421 F.3d at 769. In this case, once the drug dog alerted to the front of the defendant's vehicle, the officer had probable cause to search the vehicle.

This court finds that the officer had probable cause to conduct the second search of the defendant's vehicle.

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence (Document #23) be denied.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(l), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ Lewis M. Blanton
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of July, 2010.